UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARACELIS M. REA,

     Plaintiff,

v.                           CASE NO.: 8:12-cv-2848-T-23MAP

DISTRICT SCHOOL BOARD OF
PASCO COUNTY,

     Defendant.

_____/

## **ORDER**

An instructional assistant at Wiregrass Ranch High School, Rea sues (Doc. 1)

the District and alleges that the District violated the ADEA and the FCRA by

promoting Jose Torres (age 37) instead of Rea (age 58).  Rea also claims that the

District retaliated against her by requiring her in the English for Speakers of Other

Languages (ESOL) program to assist students in a single classroom instead of

permitting her to roam from one classroom to another.  The District moves (Doc. 14)

for summary judgment.  Having initially failed to comply with the Local Rules

(Doc. 20), Rea responds (Doc. 30), albeit incompletely.[1]

---

[1] In her response to the motion for summary judgment, instead of offering facts supported by the record, Rea typically offers only a sparse array of conclusions and opinions. *See Hodge v. ClosetMaid Corp.*, 2014 WL 1328967 (M.D. Fla. Apr. 2, 2014) (Hodges, J.) ("The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts."); *Pritchett v. Werner Enterprises, Inc.*, 2013 WL 6909892 (S.D. Ala. Dec. 31, 2013) (Steele, J.) (limiting review on a motion for summary judgment "to the exhibits, and to the specific portions of the exhibits, to which the parties [] expressly cited").

Since 2007, the District has employed Rea as an ESOL "Instructional Assistant" at Wiregrass.  An instructional assistant, Rea is not a teacher; she assists teachers and students in the school's ESOL program.  Over the years, Rea has applied – several times and unsuccessfully – to teach at Wiregrass.  In this action, Rea contests the District's failing to hire her as a Spanish and Language Arts teacher in February, 2010.  The District hired Torres, and Rea claims age discrimination.[2]

In February, 2010, the District announced a vacancy for a Spanish teacher who would also teach one period of "language arts."  The District's Human Resources Office – not anyone at Wiregrass – screened applicants and identified three qualified candidates – Rea, Torres, and Victoria Gallagher – for a face-to-face interview with supervisors at Wiregrass.

Rea held a bachelor's degree in international studies, a temporary teaching certificate, and a ESOL endorsement.  Rea's interview with Wiregrass Assistant Principal Diamela Vergne was "unremarkable."  Additionally, Vergne and Wiregrass Principal Ray Bonti were each aware of complaints about Rea's performance as an instructional assistant.[3]  In 2009, Vergne rated Rea below optimal in Rea's "ability to

---

[2] In February, 2010, the teaching position was temporary (i.e., from February through the end of the school year). Again in June, 2010, the District hired Torres instead of Rea when the position became permanent. Although Rea mentions the June, 2010, hiring in her papers, Rea fails to assert the claim in her complaint. The claim is therefore waived. In any event, the waived claim lacks substantive merit.

[3] In her first year at Wiregrass, Rea became involved in an altercation with a Spanish teacher, Ariana Leonard. Leonard complained to supervisors at Wiregrass that Rea had acted disrespectfully, had failed to perform adequately, and was "very distracting with the kids." In a meeting about the incident, Rea told Vergne that Leonard was "too young" to teach. Vergne

(continued...)

work well with others."  Vergne, who had hired Rea as an instructional assistant at
Wiregrass in 2007, recommended the District's hiring Torres.  Bonti agreed.  Given
Gallagher's experience teaching Spanish in Hillsborough County, Vergne and Bonti
ranked Gallagher second; they ranked Rea third.

In June, 2010, the District announced a vacancy in the same position for the
2010-2011 school year.  The District's Human Resources Office identified nine
qualified candidates, including Rea and Torres.  Vergne interviewed the candidates.
Vergne and Bonti again determined – for the same reasons Vergne and Bonti
articulated in February 2010 – that Torres was better qualified than Rea.  By this
time, however, Vergne and Bonti also had observed Torres teaching and were
pleased with his performance.

In count two of the complaint, Rea asserts retaliation.  But Rea did not amend
her EEOC charge or file a new charge to include a claim of retaliation.  Rea claims
that the District retaliated against her for filing an EEOC charge by requiring her to
provide ESOL instructional assistance in the Learning Lab at Wiregrass, instead of
permitting Rea to roam from classroom to classroom assisting ESOL students *ad hoc.*
But the District assigned Rea to the Learning Lab as part of a District-wide initiative
launched in 2010-2011, which provides one designated location at each school for
students to seek ESOL and other assistance outside the classroom.  The District

---

[3](...continued)
eventually acceded to Leonard's request that Rea be removed from Leonard's classroom. Rea's peers
continued to complain to Vergne and Bonti about Rea's attitude and lack of teamwork.

prepared and distributed a power-point presentation for each school, including Wiregrass, to explain the new Learning Lab initiative.

Rea also argues that the District retaliated against her when the District mistakenly sent Rea a letter stating that her position was not funded for 2013-2014. As Rea admits, the day after she complained to the union about the letter, the District's Human Resources Office called Rea, clarified that the District had sent Rea the letter in error, and reinstated Rea's position immediately. (The District erroneously sent, and immediately retracted, a similar letter to other employees.) In the end, Rea missed no work and no pay, and her job title remained.

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Rea's age discrimination claim. A *prima facie* case of age discrimination requires a showing that Rea (1) was a member of the protected age group, (2) was subject to an adverse employment action, (3) was not hired for the position she sought in favor of a person outside the protected age group, and (4) was qualified for the job. *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). If Rea successfully proves a *prima facie* case, the burden shifts to the District to "respond with a legitimate, nondiscriminatory reason for its actions." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If the District effectively responds, Rea must establish that the District's "articulated legitimate, nondiscriminatory

- 4 -

reason was a pretext to mask unlawful discrimination." *Turlington*, 135 F.3d at 1432.[4]

The District argues that Rea fails to make a *prima facie* showing that she was qualified for the job because Rea scored significantly lower than Torres on the Gallup TeacherInsight Assessment. *See Garrison v. Gambro*, 428 F.3d 933 (10th Cir. 2005). Administered by Pasco County and by school districts across the United States and Canada, the Gallup test attempts to identify prospectively outstanding teachers. Rea scored in the bottom quartile on the Gallup test; Torres scored in the top quartile on the test. District policy requires special approval by the District's Assistant Superintendent of Curriculum to hire someone with Rea's low score on the Gallup test. The disparate test scores evidence Torres' significantly higher propensity for success. In other words, Rea is not unqualified; Torres is demonstrably better qualified. Indeed, the District's Human Resources Office determined that Rea, along with Torres and Gallagher, met the minimum criteria for the position and warranted an interview.[5] Accordingly, the record establishes that Rea was qualified and that Rea makes a *prima facie* showing.

Rea correctly concedes (Doc. 21 at 14-15) that the District meets the burden of producing a non-discriminatory reason for hiring Torres over Rea. The record

---

[4] The ADEA standards govern Rea's FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Culley v. Trak Microwave Corp.*, 117 F. Supp. 2d 1317, 1322 (M.D. Fla. 2000).

[5] The District, not anyone at Wiregrass, screens an applicant to determine either whether the applicant meets the minimal criteria or whether to interview the applicant.

confirms that, like Rea, Torres worked as an ESOL instructional assistant and was both bilingual and certified to teach Spanish. Rea held a dual-major bachelor's degree; Torres held a bachelor's degree and a master's degree. Rea scored in the bottom quartile on the Gallup test; Torres scored in the top quartile. Rea's recommendations were (at best) mildly positive; Torres' recommendations were highly positive. Rea's interview was "unremarkable"; Torres' interview was highly successful. Finally, Rea's peers complained to administrators about Rea's attitude and her lack of teamwork, attributes that Vergne and Bonti observed first-hand. Torres carried no negative history.

When the District selected Torres over Rea for the permanent position in June, 2010, both Torres and Rea presented the same qualifications presented in their competition for the temporary position – with one exception. By June, 2010, Torres had taught Spanish for three months, and Vergne and Bonti were pleased with Torres' performance.

The District satisfies the burden of production, and consequently Rea bears the burden of establishing pretext. "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [age]." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). "[A] plaintiff may not establish that an employer's proffered reason is pretextual

merely by questioning the wisdom of the employer's reasons, at least not where . . .
the reason is one that might motivate a reasonable employer." *Lee*, 226 F.3d at 1253.

To show pretext, Rea argues that Torres was either less qualified or unqualified
for the position.  But in doing so, Rea relies mostly, if not entirely, on her opinion, on
her conclusions, and on hearsay.  The following excerpt exemplifies how Rea's
statements are unsupported by the record and come from sources unknown:

> Mr. Torres was hired in February 2010, however, the Spanish
> certification allowing him to teach ESOL temporarily was not
> added to his business certification until June 20, 2010. At the time
> Mr. Torres was hired for his Spanish/ESOL teaching position he
> was teaching out of field as he held a business education
> certificate, not a Florida foreign language certification in Spanish,
> which the position requires. Mr. Torres was not eligible to hold
> his teaching position nor had he received a Statement of Eligibility
> from the Department of Education (DOE). The State of Florida
> requires a teacher who is the primary language arts provider
> and/or reading teacher for the ESOL student to have the ESOL
> endorsement. [Mr. Torres] was hired as a Spanish/ESOL teacher
> holding a Temporary Business Certification, which is not related
> to the subject he was hired to teach.

(Doc. 21 at 4)  The District, on the other hand, presents evidence that, at the time of
his selection, Torres (1) was certified to teach Spanish, (2) had passed the subject area
examination for Spanish K-12 on October 21, 2008, (3) had held a temporary
certificate permitting him to teach Foreign Language-Spanish (K-12) and Business
Education (6-12) from July 1, 2009, through June 30, 2012.  (Doc. 15 at 3-4)

But even if the District erred in determining Torres' qualifications, a mistake
alone is not pretext.  "Insufficient pretext arguments include demonstrating that an
employer acted on a misunderstanding and demonstrating the foolishness of the

employer's decision." *Florence v. Novo Nordisk, Inc.*, 2013 WL 5673506 (M.D. Fla. Oct. 17, 2013) (citation omitted).  As stated by the Eleventh Circuit, "The employer may [not promote] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as the action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  In sum, Rea fails to present evidence that the District's proffered explanation amounts to a mere pretext for discrimination.  On this record, no reasonable jury could conclude otherwise.  Accordingly, Rea's discrimination claim fails.

Rea claims that the District retaliated against her by assigning her to the Learning Lab.  But Rea failed to exhaust her administrative remedies with respect to the alleged retaliation, and the claim is barred.  "A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequence[]."  *United Airlines v. Evans*, 431 U.S. 553, 558 (1977).  The plaintiff's EEOC charge (Doc. 15-2) cannot reasonably be expanded and construed to assert a claim of retaliation.  *Chanda v. Enegelhard/ICC*, 234 F.3d 1219, 1224 (11th Cir. 2000)  "Because the plaintiff failed to timely exhaust [her] administrative remedies, the plaintiff's claims are barred."  *Terhune v. Potter*, 2009 WL 2382281, at *4 (M.D. Fla. July 31, 2009).

Even if not barred, Rea's retaliation claim fails on the merits.  Although the District assigned Rea to one classroom, the Learning Lab, at Wiregrass (instead of

permitting Rea to shuffle between classrooms), the assignment was part of a District-wide initiative, established before, and independent of, Rea's assignment (whether in one slot or another).  The terms and conditions of Rea's employment – her job title, her working hours, and her pay – did not change.  In sum, Rea fails to establish "a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).  The materiality and seriousness of any change is judged objectively, not subjectively.  *Hall v. DeKalb County Govt.*, 503 Fed. App'x 781, 787 (11th Cir. 2013).  And although Rea (perhaps validly) questions whether the District's restricting the ESOL program to the Learning Lab is optimal, efficient, or even practical, the ADEA permits no interference with an employer's management of the enterprise.  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant – as long as those decisions were not made with a discriminatory motive."); *Davis*, 245 F.3d at 1244.  "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing . . . priorities." *Davis*, 245 F.3d at 1244.[6]

_____

    [6] Rea likewise attempts to discredit the District's use of the Gallup test to assess her qualifications. But the District, not Rea and not the courts, is authorized to determine how it wishes to assay applicants. Neither Rea nor the courts may second-guess the District's business judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Further, the District presents credible and unrebutted evidence that the Gallup test effects no disparate impact.

Rea fails to establish "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Platinum Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation and citation omitted).  Simply stated, Rea fails to establish retaliation.

Because the record presents no triable issue of fact and because the District is entitled to judgment as a matter of law, the District's motion for summary judgment (Doc. 14) is **GRANTED**.  The District's motion (Doc. 27) to strike Rea's response to the District's motion for summary judgment is **DENIED**.  The District's motion (Doc. 42) *in limine* is **DENIED AS MOOT**.

The clerk (1) will terminate any pending motion and (2) will close the case.

ORDERED in Tampa, Florida, on June 3, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE